Good morning. May it please the court, Gia Kim, appearing on behalf of Appellant Agustin Hernandez. I'd like to reserve two minutes for rebuttal. Mr. Hernandez's 21 year and 10 month sentence for possession and distribution of child pornography should be vacated for three reasons. Guidelines calculation error, other procedural error, and substantive unreasonableness. Beginning with the guidelines calculation issue, the district court erred here by interpreting the five level thing of value distribution enhancement as not requiring proof of a quid pro quo agreement or exchange. And this is a question of first impression in this circuit, and contrary to... We have a circuit split, right? There is a circuit split, yes. The 11th Circuit and arguably the 6th have said that such a quid pro quo is required, and the 2nd and 10th and 8th have... Mr. Hernandez, in his communications with the first agent, undercover agent, sort of chastised him for being a freeloader, and so expressed an expectation, I don't think that's a term he used, he used some other term like that, but essentially what he was saying is you're mooching. Leeching.  Leeching. Mooching, leeching, leeching. Right, that was the term. Thank you. But the idea was that he was freeloading and tried to embarrass him or perhaps suggest that unless reciprocity were forthcoming that the download would be stopped or further downloads would be stopped. Why isn't the government right about that? Your Honor, I believe the government hasn't argued that that would satisfy the quid pro quo requirement if such a requirement existed within the guideline. I believe the government argues that under its interpretation of the guideline, that that, I mean, under the government's interpretation that such a quid pro quo isn't required, the CHAT would fulfill the expectation of receipt. I sort of thought they were arguing that it does, I mean, maybe it's not required, but if it's required, it's satisfied in this case. This was not a situation where he just makes the file sharing available and nothing else happens. He actually has a conversation where he seems to express an expectation of reciprocity. And whether, you know, you think the government argues it or not, explain to me why that is not a sufficient reason for us to say even if some single value, some reciprocity or some expectation is necessary, why isn't it satisfied in this case? Well, as the government argued in its trial briefing, that this certainly didn't begin with the distribution to the first agent was when that agent, the San Diego agent, was not sharing. And before that happened, certainly there was no agreement regarding trading of files. Now, the CHAT happened at some point. Well, it doesn't matter when it happens, right? You could just say, well, I'm going to give you a freebie, but from now on in, you have to provide something of value. So the fact that it doesn't happen from the very beginning matters not at all, right? I mean, if you had let him have one download and then written back and said, look, if you want any more downloads, you had better provide me something in return, that would have been sufficient, right? So the timing doesn't matter. What might matter is the terms in which he spoke to the agent. But the timing certainly doesn't matter. There are lots of things out there where, you know, the supermarket might give you, you know, a taste of crackers or some, you know, a new cracker or something for free or a new ice cream, but then they, you know, if you want more, you're expected to buy it. Well, there's no evidence in the record that would support Mr. Hernandez knowing what sort of files this agent had available. Well, wouldn't the jury have, I mean, certainly, I'm sorry, this is a district judge, wouldn't the district judge have understood that this was a network that was frequented by people who engaged in child pornography viewing and that therefore the expectation was that what you'd get back is child pornography. But does it matter? It has to be a thing of value. You know, if he expects anything in return, if it's just a nice picture of the Grand Canyon, that's something of value as well, right? Yes, but thing of value, we would argue, as defined in the application note to the guideline, not only includes, you know, it doesn't stop with the thing of value, it also says the thing of value is anything of valuable consideration. And that consideration, the exchange, the specific quid pro quo is also incorporated into this distribution. I'm willing to assume for purposes of this argument that getting a picture of the Grand Canyon is not consideration in the mind of this particular defendant, but that child pornography is. And I'm focusing on the word expectation. It's clear that we don't have to have a deal, that is to say a quid pro quo in return for this, you promised to give me that. What we have to have is an expectation. Why is this exchange where the defendant says, hey man, where is your files? The San Diego agent says, sorry about that, I try to keep leechers out, we'll post some now. Thanks, you are leeching me a lot. Why doesn't that give us enough for expectation? Not necessarily enforceable deal, but expectation. Well, Your Honor, we have argued that expectation is not enough, but setting that aside. Well, but we've got the word expectation in the guideline, expectation of receipt. But then that phrase is further defined in the application note as relating to transactions conducted for essentially anything of valuable consideration. And it's that consideration element that goes back and defines all the transactions that are covered. So it's your position if someone had a website that said free child pornography, donations welcome, if that's what it was, that your view, that would not satisfy the guideline? It would satisfy the two-level distribution enhancement, and there is a, it specifically says public postings. Sure, but the five? No, not the five. Turning quickly to the procedural error, I'd just like to point out that the parties fundamentally disagree as to what... So the guy who stands on a street corner playing his bassoon with a hat in front of him, or his violin with a hat, where he's sort of seeded some money in there, suggesting what people will have, you think he's doing it for nothing? He has no expectation of remuneration. If the guideline stopped there and was not further defined in terms of consideration and transactions conducted for that, I think that could fall under expectation. But I think we have to look beyond just the plain language of the guideline itself towards the application note to see how thing of value is defined, because there is a further definition of it in the guideline. Okay. You want to reserve, or would you like to? Yes. Okay. I will hear from the government. May it please the court. Good morning, Your Honors. Elizabeth Yang on behalf of the United States of America. I will address the initial argument that defense counsel raised, which was the alleged guideline calculation error when the district court found the evidence suffice to apply the five-level distribution enhancement under 2G 2.2B3B. As an initial matter, I would respectfully disagree that there is a circuit split on this issue. I think a fair reading of the opinions of the various circuit courts show uniformly that the courts do not require that in order for this enhancement to apply that there be an express agreement, bargain, or quid pro quo. I believe even in the Eleventh Circuit, although in Spriggs it did have language regarding conditioned on a promise, in a later case, the Vodnase case at 667F3-1206, the Eleventh Circuit speaks of application of the enhancement as do the other circuits. And basically that there has to be evidence, whether it's direct or circumstantial, that the individual in distributing child pornography reasonably anticipated or believed in the possibility of receiving child pornography in return. Possibility is a really vague word. Do you really mean possibility, or do you mean something stronger than possibility? The case law does speak of possibility, but I think the way that circuit courts do it, pretty much anything is possible. It's possible I'm going to die when I walk out of this building. I don't think I have an expectation that that's going to happen, at least today. That's true, Your Honor. I believe that in the way that that word is used in the case law from the other circuits, coupled with the you reasonably anticipate, you expect, I do believe it sort of narrowly defines what possibility is. It's not, as the defense had argued, both at the trial court and on appeal, some sort of diffuse hope. I think the way the case law interprets the expectation enhancement using that language, there does need to be direct or circumstantial evidence that the defendant did actually expect or anticipate he would get something in return. On the facts of this case, it seems to me that your strongest point is the language that we're all focusing on, that I just read aloud to your adversary. But it's interesting at what point this exchange takes place. The downloading of the defendant's files is already underway. That is correct, Your Honor. And only at that point does he say, hey, where are your files? So is it possible to construe that exchange as, well, he allowed the download before he even said anything. Therefore, he allowed the download. Maybe there was a hope, and it turned out maybe the hope was fulfilled. But the download was already underway. Your Honor, I respectfully submit that that is not the correct interpretation. I do believe that given sort of the nature of the GigaTribe file sharing program, among the file sharing programs out there, LimeWire, BearShare, Shreza, GigaTribe is the most akin to one-on-one trading. The fact that you as a GigaTribe user get to select who you share with, that you can remove who you share with, that you can essentially police to see who is downloading from you and whether they're reciprocating. Is your argument that simply using this file sharing system, that is in itself, even absent this exchange, sufficient to show expectation? Your Honor, I do believe that the invitation acceptance feature of GigaTribe, as well as the ability to select what to share and what not to share, does make the system an inherently reciprocal system. I want to make sure I've got my question asked precisely and answered precisely. Are you arguing that simply using this file share system without more is enough to justify application of the expectation aspect of the guideline? I do think with the GigaTribe file sharing system, yes, Your Honor. What if I disagree with you and I say there has to be something more? I think Your Honor's opinion would be in line with most of the other circuit courts, even when they speak in terms of the nature of file sharing programs. They all tend to look at additional circumstantial and direct evidence. So my question for you, I'll come back to it. Why is it enough more when this exchange takes place after the downloading has been, is underway, has been permitted? I believe it is with more, Your Honor, because the, with respect to this factual scenario, the San Diego undercover agent had used an undercover GigaTribe account, which was essentially a takeover account from another GigaTribe user. He did not solicit the images from the defendant. The defendant actually sent the undercover a friend request. The undercover accepted it. At that juncture, both users would be able to see what the other has available and also would have information about the other's collection based on username. Now, in this case, the record is silent as to the undercover's username because it is an undercover account. But I do think it is a reasonable inference that the defendant, whose username was PTHC4U, was seeking to be friends with someone else who had a username that was indicative of their interest in child pornography. And when he gave the San Diego undercover access to his files, observed the undercover downloading files, he said, Hey, the system is we share. Where are your files? You are leaching from me. They didn't say the system is we share. He said where are your files. Yes, Your Honor. But I think implicit in that is the understanding that GigaTribe is, as I said, akin to a one-on-one trading system. And when the defendant said where are your files, that evidenced his expectation that by making his files available to the San Diego undercover, he would get access to the undercover files. Let me ask you a sort of picky question. We're sort of talking about what all this implies. Do we make the decision? Do we look at the district judge's decision? And he didn't make any findings on that point. Do we sort of say the district judge must have found this? I mean, it is possible to have evidentiary hearings at sentencing. They're rare, but it's possible. And certainly the district judge can make explicit findings, says, you know, when they had this transaction, I construed the transaction to be some implicit quid pro quo. Because there's a lot of implicit stuff going on here. Yes, Your Honor. But we don't have findings. Do we make the findings? Do we consider that there were implicit findings by the district court? Do we e-mail for findings? How do we do it? Well, we take the very same transaction, the very same interaction, the same record as it is presented to us, and we could view it one way as being, well, he puts the files out there, and then while the download is going on, he sort of urges, you know, the other guy to provide some files, but there's no implicit threat or no implicit suggestion that that's a condition in any way to continue the download. The other way of construing it is to say basically what he was saying, hey, buddy, you're doing a download, and if you don't provide me some files, I'm going to stop it, and you're not going to get anything from me in the future. I don't know which of those views is the correct one. I don't even know who makes that decision. Well, Your Honor, I do believe the district court actually did make findings. And if you look at Excerpts of Record 22, which is a transcript of the sentencing hearing, the district court, after argument on whether the five-level enhancement applies, states that defendant went through some steps to set up this program so that he would not have to himself personally transfer each and every file to those he had given access to his files. And then, of course, when he complains that this person is leeching, that he's taking from him but without leaving anything in kind, I think it is pretty clear a plus-five enhancement is appropriate here, that it was his intent, indeed he was policing it, it was his intent to receive similar images from those he's giving access to. And he's, of course, addressing defense. I understand your argument, but I simply don't accept it. So you take this statement by the district judge on Excerpt Page 22. This is at the bottom of the page, right? Yes, Your Honor. Lines 20 through 24. That's a finding. I do, Your Honor. I do believe that it is. I'm not arguing with you. Oh, that's fine. In your view, if it's ambiguous, if the transaction is ambiguous, will the district judge deference because he's a tile fact? I do, Your Honor. Okay. And very briefly, as I see my timing is running out, the government, as it is argued in this brief, argues that there's no procedural error or due process violation. The district court made no findings to the allegations and statements of which the defendant complains. And there's no showing that the district court used that information, that it was demonstrably the basis of the sentence. And finally, unless the Court has any further questions. Well, there's a little housekeeping. We've got some difference between the written judgment and the oral pronouncement. Yes, Your Honor. And the government submits that that correction should be made, and it could simply be made by instruction as opposed to a remand back to the district court. But it doesn't matter, right? As far as the government is concerned, either way is fine. If the court is going to order a limited remand on that issue, the government does not see any error. If the court is going to order a full remand, that's obviously the government believes that that is not appropriate. Fair enough. Thank you very much. Thank you. Did you follow that exchange about page 22? Yes. It looks like a finding to me that sort of puts a little meat on the bones of an otherwise ambiguous transaction. This is the district judge saying the way I read it is that he had an expectation. Is that a finding? Are we bound by it? I mean, it is a finding. It's not based on sufficient evidence in the record. As this court pointed out, that there is much left unsaid in this transaction, and there are deficiencies. A lot of times things are left unsaid. In several contract cases, lots of stuff is left unsaid, and courts fill in that kind of stuff all the time. They fill in terms of transactions all the time. Why isn't this the kind of situation, precisely the kind of situation where we are dealing with illegal transactions, where we have a long history of people using code, people using elliptical phrases, and then juries and sometimes judges have to go in and say they said X, but really what was going on is much more than that. Isn't that sort of the kind of thing that trial judges and trial juries do? As a general matter, yes. However, here it's the government's burden that this higher enhancement applies, and I think more is needed about the context in which this exchange is happening. We know it's an undercover agent. We don't know what his username is. We know that he doesn't have any files being shared right now, meaning that Mr. Hernandez can't see what he might have on offer to share. We don't know whether there's any history of this account downloading from or reciprocally providing images to Mr. Hernandez's account. These are all things that are in the record, that could have been in the record, and that would further support a context of that this is an area for exchange. And GigaTribe is not purely a child pornography trading website. It's different than these Internet chat rooms that these cases sort of arose out of, these trading sites. It is a general file-sharing site, and although there is this friend aspect, unless these files are in the shared folder or we have information that there's something about the username or past history of interaction with Mr. Hernandez, there's not enough here to base a five-level and essentially six-year enhancement on. Thank you. Thank you. Thank you, Counsel. The case is solved. We'll stand some minutes.
judges: Kozinski, Fletcher, Owens